# UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

| | |
|---|---|
| In re:<br><br>ALICIA ANN MAHAR,<br><br>*Debtor*. | Case No. 25-72454-SCS<br><br>Chapter 7 |

## MEMORANDUM OPINION

This matter came on for an expedited hearing on October 30, 2025, upon the Debtor's Emergency Motion to Set Aside Foreclosure Sale for Violation of Court's Exclusive Jurisdiction Over Property of the Estate. At the conclusion of the hearing, the Court requested briefing from the parties. Upon review of the post-hearing briefs, the Court determined that the matter should be taken under advisement. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b)(2) and 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a). This Memorandum Opinion constitutes the Court's findings and conclusions of law.

### I. Procedural History

The Debtor, by counsel, filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code on October 20, 2025.[1] ECF No. 1.[2] On October 21, 2025, counsel for the Debtor filed an Emergency Motion to Set Aside Foreclosure Sale for Violation of Court's Exclusive Jurisdiction Over Property of the Estate (the "Motion"). ECF No. 7. The Debtor requested an expedited hearing on her Motion to avoid "irreparable harm to the Debtor and the bankruptcy

---

[1] The instant case is the eleventh bankruptcy case filed by the Debtor in the Norfolk Division of the Eastern District of Virginia since 2012.
[2] All citations to "ECF No." are to documents filed in the above-captioned bankruptcy case unless otherwise noted.

estate." ECF No. 9, Motion for Expedited Hearing, filed Oct. 21, 2025. By Order entered October 22, 2025, the Court granted the Debtor's motion for an expedited hearing and scheduled a hearing on the Motion for October 30, 2025, on the condition that counsel for the Debtor provided immediate notice of the hearing to all appropriate parties and filed proof of same with the Court. ECF No. 13. The Court further established a response deadline of October 28, 2025. *Id*. Counsel for the Debtor provided timely notice of the expedited hearing to counsel for NewRez, LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint"), the Chapter 7 Trustee, and the United States Trustee on October 22, 2025. ECF No. 14. Counsel for Shellpoint timely filed a response to the Motion on October 28, 2025 (ECF No. 24), to which counsel for the Debtor replied the same day (ECF No. 25).

II. The Requested Relief and Responsive Pleadings

The Motion centers on a foreclosure sale allegedly conducted by Shellpoint, as foreclosure trustee,[3] on the Debtor's real property located at 4345 Charity Neck Road, Virginia Beach, Virginia (the "Property"), the day after the petition commencing this case was filed. ECF No. 7, at 1-2. The Debtor asserts that "[t]he foreclosure trustee and Shellpoint proceeded to foreclose on estate property without notice to or authorization from the Chapter 7 trustee or this Court" and despite knowledge of the bankruptcy filing. *Id*. at 2. The Debtor acknowledges that the automatic stay

---

[3] While this matter was under advisement, Shellpoint plead, in a separate proceeding also centered on the foreclosure, that it did not serve as foreclosure trustee on the Property but rather, the foreclosure sale was conducted by Professional Foreclosure Corporation of Virginia. Adv. Proc. No. 25-07035-SCS, ECF No. 26, Response in Opposition to Plaintiff's Motion for Injunction to Void and Restrain Enforcement of Foreclosure Sale, filed Nov. 17, 2025, by Defendants NewRez, LLC d/b/a Shellpoint Mortgage Servicing and U.S. National Bank National Association as Trustee for Credit Suisse First Boston Mortgage Securities Corp., CSAP Mortgage-Backed Pass-Through Certificates, Series 2006-3, at 5. The Debtor, by counsel, did not contest this assertion. *See* Adv. Proc. No. 25-07035-SCS, ECF No. 30, Transcript of Nov. 20, 2025, hearing, at 2. The apparent, actual foreclosure trustee was not named as a party to the instant matter under consideration.

2

under 11 U.S.C. § 362(c)(4) did not go into effect upon the filing of this case because the Debtor had two pending bankruptcy cases that were dismissed within the year preceding the filing of the instant case. *Id*. Nonetheless, the Debtor argues that the Property became property of the bankruptcy estate, over which this Court has exclusive jurisdiction, upon the petition's filing. *Id*. Consequently, the Debtor asserts that the foreclosure sale "violated the Court's exclusive jurisdiction and undermined the Chapter 7 trustee's ability to administer the estate." *Id*. The Debtor urges this Court to declare the foreclosure sale to be void, as it occurred without the Court's permission, and likewise invoke its equitable powers under Section 105(a) to set aside the sale. *Id*. By doing so, the Debtor reasons that the Court's jurisdiction over the Property will be preserved, and the Chapter 7 Trustee can determine whether to administer it for the benefit of creditors. *Id*. at 2-3. The Motion further asks the Court to "[e]njoin[] Shellpoint and the foreclosure trustee from recording or enforcing any deed or transfer instrument relating to the Property; and [r]estor[e] title to the Debtor and the bankruptcy estate[.]"[4] *Id*. at 3.

On October 28, 2025, Shellpoint, by counsel, responded to the Motion and requested that it be denied. ECF No. 24. Shellpoint first argues that the conduction of the foreclosure sale was not prohibited because no automatic stay arose in this case. *Id*. at 1-2. Shellpoint additionally asserts that principles of equity weigh against the relief the Debtor seeks because of the Debtor's numerous prior filings, as the instant case represents the Debtor's eleventh (11th) bankruptcy filing. *Id*. at 2. Further, Shellpoint contends there is no equity in the Property based upon the value of the Property ($1,195,700.00) and the loan balance ($1,353,261.30),[5] which amounts are both

---

[4] Despite the request for injunctive relief, the Debtor filed this matter in the form of a motion in the main bankruptcy case and not as an adversary proceeding.

[5] At the October 30, 2025 hearing, counsel for Shellpoint indicated that the actual total amount of Shellpoint's claim exceeds $2 million based upon the proof of claim filed regarding this secured debt in the Debtor's most recent, previous case. *See* Claim No. 8-1, filed May 9, 2025, Case No.

3

set forth in the Debtor's bankruptcy schedules. *Id*. at 3 (citing Debtor's Schedule D: Creditors Who Have Claims Secured by Property, filed Oct. 20, 2025).

Counsel for the Debtor filed a reply on October 28, 2025. ECF No. 25. The Debtor reiterates that the Court's jurisdiction over property of the estate rests not upon the existence of the automatic stay, but, rather, is independent of it. *Id*. at 1. She argues that the foreclosure sale interferes with the Court's jurisdiction and "constitute[s] an unauthorized exercise of control over estate property . . . ." *Id*. In further support of her argument, the Debtor asserts that the sale offends the statutory provisions concerning property of the estate and the Chapter 7 Trustee's duties because the Chapter 7 Trustee was neither provided with notice of the sale nor the opportunity to administer the Property. *Id*. at 2. Additionally, the Debtor contends that restoration of the status quo as of the petition date would permit the Chapter 7 Trustee to evaluate the Property and will not prejudice Shellpoint. *Id*. Finally, the Debtor argues that "[e]quity requires the [P]roperty to be reverted back to the [D]ebtor until conclusion of the newly filed litigation in this Court[,]" referencing an adversary proceeding the Debtor filed contemporaneously with the instant motion.[6] *Id*.

---

25-70412-FJS (setting forth claim amount of $2,050,466.75 as of the Feb. 28, 2025 petition date of that case). The proof of claim further indicated that the amount necessary to cure the pre-petition default was $1,292,557.28. *Id*.

[6] *Alicia Ann Mahar v. New Rez LLC d/b/a Shellpoint Mortgage Servicing and U.S. National Bank National Association as Trustee for Credit Suisse First Boston Mortgage Securities Corp., CSAP Mortgage-Backed Pass-Through Certificates, Series 2006-3 (as identified in Annex 3 to Credit Suisse DOJ Settlement)*, Adv. Proc. No. 25-07035-SCS, filed Oct. 21, 2025.

III. The Hearing on the Motion

Counsel for both parties appeared at the October 30, 2025 hearing[7] and presented their arguments.[8] Upon questioning by the Court regarding standing, counsel for the Debtor acknowledged that the Debtor was assuming the rights of the Chapter 7 Trustee to pursue the requested relief. Counsel for the Debtor asserted that the urgency caused by the post-petition foreclosure sale in the infancy of the case and the request to maintain the status quo as of the petition date warranted her pursuit, and the granting, of the requested relief for a short period of time, until the Chapter 7 Trustee determines whether to administer the Property. Counsel additionally relied upon the adversary proceeding initiated by the Debtor against Shellpoint and a second defendant (which party was not noticed for the hearing on the instant motion)[9] as supporting her standing here. Counsel maintained that the injunctive relief sought in the adversary proceeding regarding the Debtor's allegation that Shellpoint never possessed the right to conduct the foreclosure reinforces the need to maintain the petition-date status quo under 11 U.S.C. § 105.

Counsel for Shellpoint made no direct argument concerning standing aside from pointing out that the Chapter 7 Trustee could, but had not, to date, sought relief from the Court as to the Property. Further, Shellpoint asserted, for the first time, that no stay arose as to the trustee when the case was filed.

At the conclusion of the arguments, the Court directed the parties to file briefs addressing the Debtor's standing to pursue the relief requested as well as Shellpoint's assertion that no automatic stay arose as to the Chapter 7 Trustee upon the filing of the instant case.

---

[7] The Chapter 7 Trustee did not appear at the hearing.
[8] As the Court has determined, for the reasons stated *infra*, that the Motion must be denied due to lack of standing and procedural grounds, the Court omits recitation of the parties' additional arguments.
[9] *See supra* n.6.

5

IV. Post-Hearing Briefs

Counsel for both parties timely filed their post-hearing briefs. ECF Nos. 27, 29. The parties agree that no automatic stay arose as to the Debtor or the Chapter 7 Trustee upon the filing of this case. ECF No. 27, at 2;[10] ECF No. 29, at 1, 3. The Court accepts, for the purpose of the instant matter, the parties' concession on this legal point. Accordingly, the remaining issue for consideration is whether the Debtor has standing to seek the relief she has requested.

In support of her position, the Debtor asserts that she would have a pecuniary interest if the Chapter 7 Trustee were allowed to sell the Property. ECF No. 27, at 2. The Debtor submits that the Property was sold at the foreclosure sale for $977,000.00. *Id*. at 1. Given the scheduled value of the Property and that the scheduled debt thereon far exceeds the foreclosure sale amount, the Debtor posits, without any evidence or admission by Shellpoint, that "the secured creditor would have been willing to accept the same $977,000 in a short sale negotiated through the Chapter 7 Trustee," which "would have generated proceeds for the estate." *Id*. In the event of such sale by the trustee, the Debtor maintains that her entitlement to her $50,000.00 homestead exemption pursuant to Virginia Code Ann. § 34-4 provides the required "pecuniary interest in the transaction" to confer upon her the necessary standing to seek the requested relief. *Id*. at 2; *see also id.* at 1 (citing generally *Willemain v. Kivitz*, 764 F.2d 1019 (4th Cir. 1985)).

The Debtor asserts that the opinion by Judge Phillips of this Court in *In re Atiyat*, Case No. 21-32555, 2024 WL 4481072 (Bankr. E.D. Va. Oct. 11, 2024), supports her argument. ECF No.

---

[10] The Debtor admits that 11 U.S.C. § 362(c)(4) indicates no stay arose as to the Chapter 7 Trustee upon the filing of the petition in this case. ECF No. 27, at 2. Such confession appears to substantially undermine the Debtor's simultaneous argument that the Court has jurisdiction over the Property after a post-petition foreclosure sale not subject to the automatic stay. However, because the Court has determined that the Debtor lacks standing, in addition to the procedural defects of the Motion, the Court need not decide the merits of this issue.

27, at 2. In the *Atiyat* case, Judge Phillips determined that a chapter 7 debtor could assert a homestead exemption in the proceeds of a property sale where the trustee reached a carveout agreement with the secured creditor. *In re Atiyat*, 2024 WL 4481072, at *10. As a result, the debtor had standing to object to the trustee's sale motion. *Id*. Under this principle, the Debtor contends that "because [she] would have been entitled to $50,000 in exempt proceeds had the [P]roperty been sold through the estate, she has a pecuniary interest in the transaction and standing to move to set aside the sale." ECF No. 27, at 2.

Counsel for Shellpoint did not address the issue of standing in its brief.

V. Conclusions of Law

A. Standing

This Court has recently opined on the issue of a debtor's standing in a Chapter 7 bankruptcy proceeding.

> An insolvent debtor generally cannot establish standing due to the lack of pecuniary interest in the assets to be distributed; in other words, where there are no residual estate funds for the debtor, the debtor cannot challenge the orderly administration of the assets comprising the bankruptcy estate by a trustee. *Grausz v. Englander*, 321 F.3d 467, 473 (4th Cir. 2003); *Willemain v. Kivitz*, 764 F.2d 1019, 1022 (4th Cir. 1985) (quoting *Kapp v. Naturelle, Inc.* (*In re Kapp*), 611 F.2d 703, 706-07 (8th Cir. 1979)); *Vaughn v. Gold*, 671 B.R. 698, 705 (E.D. Va. 2025) (citing *Willemain*, 764 F.2d at 1022). Conversely, if there is a reasonable possibility that a surplus of assets could inure to the debtor, the debtor has standing to contest claims made in their case. *White v. Univision of Va., Inc.* (*In re Urban Broad. Corp.*), 401 F.3d 236, 243-44 (4th Cir. 2005) (citing *United States Trustee v. Clark* (*In re Clark*), 927 F.2d 793, 795 (4th Cir. 1991)); *Robb v. Harder* (*In re Robb*), 534 B.R. 354, 357 (B.A.P. 8th Cir. 2015); *Vaughn*, 671 B.R. at 706 (citing *McGuirl v. White*, 86 F.3d 1232, 1235 (D.C. Cir. 1996)); *In re Kora & Williams Corp.*, No 88-41402PM, 2006 WL 4482004, at *1 n.1 (Bankr. D. Md. Oct. 28, 2006) (citing *Willemain*, 764 F.2d at 1022-23) (concluding that the Chapter 7 debtor in solvent estate had standing to object to fee allowance).

*In re 1333 Baecher Lane VA, LLC*, Case No. 24-71088-SCS, 2025 WL 3083057, at *13 (Bankr. E.D. Va. Nov. 4, 2025).

7

Where the solvency of the estate, and therefore the potential financial benefit to the debtor in the form of residual estate proceeds, is speculative or remote, courts have declined to find that the debtor has standing, as illustrated in *Dandridge v. Scott*, Civil Action No. 3:18CV00051, 2019 WL 4228457 (W.D. Va. Sept. 5, 2019). In *Dandridge*, the appellant-debtor's alternative to the Chapter 7 trustee's sale of property of the estate involved three conditions precedent: the Court's reversal of the sale of the estate property; the debtor's eventual sale of the asset; and a sales price for the value alleged by the debtor. *Id*. at *2. The Court found the debtor's alternative disposition of the estate property was too speculative to demonstrate his direct financial benefit, and thus he did not have standing to challenge the approved asset sale by the trustee. *Id*. at *2 (citing *In re Miller*, No. RWT 10cv2466, 2011 WL 3758712, at *3-4 (D. Md. Aug. 24, 2011)). The United States District Court for the District of Maryland reached the same conclusion in *In re Miller*, where the appellants, like in *Dandridge*, relied on multiple conditions precedent to bolster their standing argument. *In re Miller*, 2011 WL 3758712, at *4. In *Miller*, the debtors appealed an order authorizing the trustee to sell the debtors' 50% interest in a real estate corporation. *Id.* at *1. The debtors asserted standing based on the future financial benefit from the sale of the stock following development of the corporation's sole real estate parcel, which proceeds could satisfy their nondischargeable debts. *Id.* at *4. The Court found the debtors' argument unpersuasive, concluding that "[s]uch speculative 'benefits' which might flow from reversal of the Bankruptcy Court's Order," a result itself that was uncertain, were insufficient to establish standing, particularly since the debtors produced no evidence that a profit would result from such sale at an unspecified future date. *Id*. The Court contrasted its conclusion with that reached in *McGuirl*, where debtors of an insolvent estate were found to have "a direct, pecuniary interest" in the outcome of a trustee's application for administrative expenses, as any excess funds would be used

8

by the trustee to pay otherwise nondischargeable debts and reduce the debtors' ultimate liability thereon. *Id.* (citing *McGuirl*, 86 F.3d at 1235-36).

The Court finds that the instant case commands the same result as the *Dandridge* and *Miller* cases. The Debtor asks this Court to presume, at this early stage and without any certainty, that a host of speculative events could potentially occur, all of which would or reasonably may result in an outcome favorable to her, such that she has standing to pursue the instant matter. The Debtor presented no evidence to the Court as to the reasonableness or likelihood of these hypothetical events.[11] Standing cannot be found where the Debtor's assertions rest solely on conjecture.

Were the Court to accept the Debtor's theory, there would be no limit to the far-reaching notions of future debtors concerning the creation of equity in the bankruptcy estate for their benefit or of other potentially interested parties regarding how they may be affected by the outcome of a bankruptcy case. While "the concept of standing in bankruptcy cases must be broad, since the case addresses all aspects of the debtor's economic picture[,]" the Debtor's supposition would swell such proposition beyond its bounds. *Nassau Sav. & Loan Ass'n v. Miller* (*In re Gulph Woods Corp.*), 116 B.R. 423, 430 (Bankr. E.D. Pa. 1990). Limitations on standing "ensure that bankruptcy proceedings are not unreasonably delayed by protracted litigation" and avoid "overwhelm[ing] bankruptcy courts with claims by the many parties indirectly affected by bankruptcy court orders." *Dandridge*, 2019 WL 4228457, at *2 (citing *McGuirl*, 86 F.3d at 1236-37); *McGuirl*, 86 F.3d at 1235 (citing *Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 741 (3rd Cir. 1995); *Fondiller v. Robertson* (*In re Fondiller*), 707 F.2d 441, 443 (9th Cir. 1983)); *see also Richman v. First Woman's Bank* (*In re Richman*), 104 F.3d 654, 657 (4th Cir. 1997) (citing *McGuirl*, 86 F.3d at

---

[11] The Debtor's hypothetical presumes that the Chapter 7 Trustee would ultimately divest her of the Property in any event.

9

1235). Despite the Debtor's contrary arguments, there are no exceptions created to the principles of standing due to the exigent circumstances created by the foreclosure or the potential short duration for the imposition of relief until the Chapter 7 Trustee decides whether to administer the Property.

To be sure, "[w]here courts are uncertain as to whether a particular party will be economically impacted such that their standing is questioned, the more cautionary approach is taken, and the matter is decided on the merits." *In re 1333 Baecher Lane VA, LLC*, 2025 WL 3083057, at *13 n.47 (citing *In re Visiting Nurse Ass'n*, 176 B.R. 748, 751 (Bankr. E.D. Pa. 1995); *In re Gulph Woods Corp.*, 116 B.R. at 430). Such "cautionary approach" is not warranted here, as the potential pecuniary benefit for the Debtor appears highly questionable. The Debtor values the Property at $1,195,700.00 and lists the loan balance as $1,353,261.30 in her schedules. ECF No. 1, Voluntary Petition and Schedules, at 10, 23. Moreover, Shellpoint's counsel indicated that its total claim exceeds $2 million, and indeed, the Court's records in the Debtor's most recent prior case reflects a balance of $2,050,466.75.[12] While the Chapter 7 Trustee is a highly experienced attorney and will no doubt faithfully exercise his statutory duties to maximize the value of the estate, it transcends logic to suppose that the trustee could orchestrate a transaction where the secured creditor accepts the million dollar loss as presumed by the Debtor's unsupported theory.

Further, the Debtor's argument, at its core, seeks to assert and usurp the fundamental statutory rights of the Chapter 7 Trustee to administer the Debtor's assets. The Debtor, of her own volition, chose to file her petition under Chapter 7 of the United States Bankruptcy Code. Fundamental to a Chapter 7 proceeding is that the appointed Chapter 7 Trustee has the sole

---

[12] *See* n.5, *supra*.

statutory authority to determine the disposition of property of the estate.[13] 11 U.S.C. § 704(a)(1). At this juncture, there is simply no basis to permit the Debtor to assume and enforce the trustee's rights, which are exclusively his by statute.

Finally, the Debtor's reliance on the *Atiyat* decision is misplaced. First, the Debtor overlooks that vast factual chasm between *Atiyat* and the instant matter. The trustee in *Atiyat* had a contract in hand to sell property that was subject to the automatic stay. *In re Atiyat*, 2024 WL 4481072, at *2. Further, the secured lender had already agreed to a carveout from the sales proceeds to allow the trustee to make a distribution to the unsecured creditors. *Id*. at *3. Neither of these events, both critical to the Debtor's argument, have occurred in the instant matter, nor has the Debtor offered any evidence that either outcome has a reasonable possibility of materializing. Second, the *Atiyat* debtor's standing did not depend on a speculative or remote event. Rather, the crux was whether the debtor was entitled to assert his homestead exemption even though the bankruptcy estate was insolvent and the property lacked equity. *Id*. at *7. Judge Phillips concluded that the United States Supreme Court's decisions in *Czyzewski v. Jevic Holding Corp.* and *Law v. Siegel* required that unencumbered funds resulting from a carveout agreement should be applied to a debtor's homestead exemption. *Id*. at *9-10 (discussing *Jubber v. Bird* (*In re Bird*), 577 B.R. 365, 379 n.64, 386 (B.A.P. 10th Cir. 2017) (which analyzed *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 468-70 (2017), and *Law v. Siegel*, 571 U.S. 415, 422 (2014)). Consequently, Judge Phillips found that the debtor had standing to object to the trustee's proposed sale since he could

---

[13] Subsequent to the conduction of the expedited hearing, the Chapter 7 Trustee filed a Request for Asset Notice on November 11, 2025, and requested the Clerk send notice to all creditors and parties in interest that there may be assets available for distribution in Ms. Mahar's case. ECF No. 30. The Clerk issued the Notice of Need to File Proof of Claim Due to Recovery of Assets on November 16, 2025, which notified creditors of the need to file a proof of claim on or before February 13, 2026. ECF No. 34.

11

assert his exemption in the carveout proceeds. *Id*. at *10. The Debtor here does not enjoy the factual progress that was present in *Atiyat*, nor has she demonstrated that such circumstances may come to pass. Therefore, any potential entitlement to her homestead exemption cannot confer standing to pursue the relief requested.

### B. Procedural Grounds

The Motion must also be denied on procedural grounds. The relief the Debtor seeks is injunctive in nature. As such, Federal Rule of Bankruptcy Procedure 7001 requires an action for injunctive relief to be filed in the form of an adversary proceeding. *See* Fed. R. Bankr. P. 7001(g). As the instant matter was brought by motion in the main bankruptcy case, it is procedurally defective and thus fails to satisfy the aforesaid procedural requirement. *See MFS Telecom, Inc. v. Motorola, Inc.* (*In re Conxus Commc'ns, Inc.*), 262 B.R. 893, 899-901 (D. Del. 2001) (citing former Federal Rule of Bankruptcy Procedure 7001(7); *In re Best Prods. Co.*, 203 B.R. 51, 54 (Bankr. E.D. Va. 1996)); *In re Roberson*, Case No. 18-05432-5-JNC, 2020 WL 6265062, at *10 (Bankr. E.D.N.C. Oct. 23, 2020) (citing former Federal Rule of Bankruptcy Procedure 7001(7)).[14]

### VI. Conclusion

The Debtor's reliance on a series of wholly hypothetical events that *could* result in a possible exemption dividend betrays the speciousness of her argument. For the reasons stated herein, the Court finds that the Emergency Motion to Set Aside Foreclosure Sale for Violation of Court's Exclusive Jurisdiction Over Property of the Estate should be denied for lack of standing

---

[14] The Court acknowledges that, in some instances, the interests of judicial economy and lack of prejudice may allow a court to address the merits of injunctive relief without requiring a formal adversary proceeding to be filed. *See In re Brier Creek Corp. Ctr. Assocs. Ltd. P'ship*, No. 12-01855-SWH, 2013 WL 144082, at *2 (Bankr. E.D.N.C. Jan. 14, 2013). Even if the Court were to dispense with the procedural requirements, the Debtor's request would still fail for lack of standing to seek such relief.

and for failure to satisfy the procedural requirements of Part VII of the Federal Rules of Bankruptcy Procedure.

A separate Order will be contemporaneously issued consistent with this Memorandum Opinion.

The Clerk shall deliver copies of this Memorandum Opinion to the Debtor; counsel for the Debtor; the Chapter 7 Trustee; and counsel for Shellpoint Mortgage Servicing.

IT IS SO ORDERED.

Entered this **2nd day** of **December, 2025**, at Norfolk, in the Eastern District of Virginia.

/s/ Stephen C St-John
STEPHEN C. ST. JOHN
United States Bankruptcy Judge

Entered On Docket: December 2 2025